UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SYLVESTER JONES,**

**Plaintiff,**

**-vs-** **Case No. 6:04-cv-78-Orl-28KRS**

**UNITED SPACE ALLIANCE, L.L.C.,**

**Defendant.**

---

# ORDER

Plaintiff Sylvester Jones ("Jones") brings the instant action against his former employer, United Space Alliance, L.L.C. ("USA" or "Defendant") alleging race- and religion-based discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act ("FCRA"), Chapter 760, Florida Statutes. In his Amended Complaint (Doc. 3), Jones claims that he was subjected to a hostile work environment based on his religion and that he was terminated because of his race and religion.

This case is currently before the Court on Defendant's Motion for Summary Judgment (Doc. 29) and Jones's Response in Opposition (Doc. 43) to the motion. In support of its motion, USA has submitted an appendix consisting of several declarations as well as excerpts from the deposition of Jones. (App. in Supp. of Def.'s Mot. for Summ. J., Doc. 30). In response, Jones has submitted his own declaration. (Doc. 44). Having considered the

parties' submissions and pertinent law, the Court concludes that USA's motion shall be granted as to all four counts of the Amended Complaint.

## I. Background

Jones is an African-American male who describes his religion as Apostolic/Pentecostal. USA is a NASA contractor involved in the Space Shuttle Program. In 1987, Jones was hired by USA's predecessor, Lockheed Space Operations Company, as a Senior Engineer, and in 1991 he was transferred to the Reliability Engineering department. As described by the parties, "Reliability Engineering analyzes designs developed by Design Engineering for ground support equipment systems used in the processing and launch of the Space Shuttle." (Joint Pretrial Statement, Doc. 48 at 15 (Statement of Admitted Facts ¶ G)).

As an engineer in the Reliability Engineering department, one of Jones's primary job duties was the preparation of System Assurance Analyses ("SAAs"). (Statement of Admitted Facts ¶ H). The parties agree on the following stipulated facts regarding the preparation of SAAs:

> In preparing the analysis for the SAA, the Reliability Engineer must analyze whether the design under review complies with all the requirements established by NASA for Manned Space Flight, and with the Operating Procedures and Internal Operating Procedures established by USA to assure both compliance with NASA's requirements and the objective of eliminating or minimizing to an acceptable level the risk of safety [sic] to personnel or damage to Shuttle flight hardware.
>
> Timely and accurate completion of SAAs is critical to enable safe deployment of the equipment, component or system for actual use.

> Preparation of SAAs proceeds in a series of stages, each with attendant reviews and approvals; these stages involve incrementally more critical reviews of the draft SAA by the assigned Reliability Engineering Technical Checker and First Line Manager.
>
> At each stage, comments to the submitted draft (commonly referred to as "redlines") are made and [sic] which the Reliability Engineer must disposition, making the necessary changes to the SAA draft as called for by the redlines.
>
> At the Table Top Review, the Reliability Engineer and engineers from various other USA departments meet with NASA personnel to present the reliability analysis represented by SAA for approval. If approved and no unaddressed risk is identified, the document is released.

(Statement of Admitted Facts ¶¶ J-N).

In November 2001, Jones was placed on a Performance Improvement Plan ("PIP") because of an "unacceptable disparity between performance expectations and [Jones's] actual performance" in the areas of "quantity of work," "quality of work," and "timely communication." (Letter from J.W. Barnette to Sylvester Jones of 11/15/01, Ex. 30 to Jones Dep., at 1). In the letter informing him of the implementation of the PIP, Jones was advised that "[f]ailure . . . to achieve fully acceptable performance in these areas during this PIP period, or to maintain it during the remainder of the opportunity year, will result in further corrective action without any further opportunity to demonstrate acceptable performance. Such further action may include termination of your employment . . . ." (Id. at 1).

The deficiencies identified in the PIP were as follows:

> Employee requires far too much direct supervision for a person with his departmental seniority and for a person classified as a senior career level engineer (i.e., Engineering Staff IV). Employee fails to complete assigned Systems Assurance Analyses (SAAs). The interim draft SAAs that are produced by the Employee have quality problems that require

> repeated reviews to assure the accuracy of the SAA and compliance to requirements. Employee responses to requests are frequently late or are not provided at all.

(PIP, Ex. 30 to Jones Dep.). The PIP listed three specific expectations: (1) "Assigned SAAs are completed on time or early"; (2) Review comments to draft SAAs will be correctly dispositioned the first time by the Employee without subsequent follow-up reviews"; and (3) "Responses are provided to requests in a timely manner." (Id.). Three particular SAAs were to be completed during the PIP period, (Id.), but during the period one of them was removed as a PIP requirement,[1] leaving two for completion. The First Line Manager of the Reliability Engineering Department, Jack Barnette, met with Jones weekly during the PIP period to discuss Jones's progress. (See Employee PIP Meeting Mins., Exs. 31-41 to Jones Dep.).

On April 16, 2002, Jack Barnette submitted a "Final Summary of Progress" with respect to Jones's PIP. (Ex. 42 to Jones Dep.). In that summary, Barnette reported that neither of the required SAAs was completed during the period and that Jones "did not demonstrate the goal of completing the two SAAs without substantial involvement from the Manager." (Ex. 42 to Jones Dep.). Barnette also identified problems with the other two expectations of the PIP. (Ex. 42 to Jones Dep.). Barnette concluded his summary by stating that Jones's performance was still unacceptable and that Barnette was "referring this matter to a Senior Management Review Board (SMRB) for consideration of further action, up to and including termination . . . ." (Ex. 42 to Jones Dep.).

---

[1]Jack Barnette explained in his Declaration that early in the PIP period, Jones gave him a 90% draft of one SAA and that because Barnette was too busy with other work to provide timely comments to Jones, that SAA was eliminated from the PIP. (Barnette Decl., App. Tab A at 11-12 ¶ 36).

The SMRB – consisting of Dave Ashwell, the Business Advocate for Human Resources, Director of Mission Assurance Jimmy Rudolph, and Director of Program Support Eugene Beckett – met and decided unanimously to terminate Jones's employment due to "unremedied unsatisfactory performance." (Decl. of Dave Ashwell, App. Tab D). Jones was terminated on May 6, 2002.

Jones filed a charge of discrimination with the EEOC in November 2002[2] (Attach. to Complaint, Doc. 2). The EEOC issued Jones a Notice of Suit Rights on May 30, 2003 (Attach. to Doc. 2), and Jones instituted this action in August 2003 (Doc. 2).[3] USA's summary judgment motion (Doc. 29) is now ripe for ruling.

## II. Legal Discussion

### A. Summary Judgment Standards

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

[2]Although there are references in the Answer (Doc. 4) regarding compliance with administrative requirements, in its summary judgment motion USA does not contest the timeliness or sufficiency of Jones's EEOC charge.

[3]This action was initially filed in state court (Doc. 2) and was removed to this Court in January 2004 (Doc. 1).

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations." Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997). "The evidence presented cannot consist of conclusory allegations or legal conclusions." Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991); see also Fed. R. Civ. P. 56(e) (providing that nonmovant's response "must set forth specific facts showing that there is a genuine issue for trial").

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). However, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Moreover, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

"Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Anderson, 477 U.S. at 250-51). "'In a response to a motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party

must prevail as a matter of law.'" Id. (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988) and Anderson, 477 U.S. at 251-52); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment."). "[T]he summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale." Chapman v. Al Transport, 229 F.3d 1012, 1026 (11th Cir. 2000).

B. The Merits of USA's Motion

In his Amended Complaint, Jones alleges that he was subjected to a hostile work environment based on his religion and that he was terminated based on his religion and his race.[4] These claims will be addressed in turn.

i. The Hostile Environment Claims

Jones contends that he suffered harassment at work based on his religion. In the motion and response, the parties specifically address only four events[5] that allegedly created this hostile environment: (1) a statement by Jack Barnette at a staff meeting that there

[4]The Amended Complaint alleges racial and religious discrimination under both Title VII and the Florida Civil Rights Act. Courts consistently apply the case law interpreting Title VII to claims under the FCRA as well because the FCRA is patterned on Title VII. See, e.g., Maniccia v. Brown, 171 F.3d 1364, 1368 n.2 (11th Cir. 1999). Hence, the discussion of the Title VII claims in this Order applies equally to the FCRA claims, and those claims will not be discussed separately.

[5]Although additional events are mentioned in the record, consideration of those events would not alter the Court's analysis or conclusion.

should not be a "sermon" or that there should be no "preaching"; (2) removal by a co-worker, Gary Gleason, of a concert-promotion flyer that Jones had posted on a bulletin board; (3) that Jack Barnette told Jones to put away a Bible that he had on his desk; and (4) a statement by Richard Harvey to Jones that a co-worker had complained about Jones's ID-badge lanyard containing the word "Jesus" and that perhaps Jones should consider not wearing the lanyard. USA is correct that these events fall short of the level of severity required for an actionable hostile environment claim.

To establish a hostile environment claim based on religion under Title VII, a plaintiff must show (1) that he was a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on his religion; (4) that the harassment was so severe or pervasive that it altered the terms or conditions of his employment and created a discriminatorily abusive working environment; and (5) a basis for employer liability. Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 582 (11th Cir. 2000); see also Succar v. Dade County Sch. Bd., 229 F.3d 1343 (11th Cir. 2000).[6]

The determination of whether an environment is hostile "can be determined only by looking at all the circumstances." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). The circumstances to consider "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510

---

[6]Although Gupta and Succar involved allegations of sexual harassment rather than religious harassment, the same standards employed in sex-based hostile environment claims apply to religion-based hostile environment claims. See, e.g., Glaser v. Levitt, No. 98 C 210, 1998 WL 684207 (N.D. Ill. Sept. 23, 1998).

U.S. at 23. It is well-settled that "'[s]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 82(1998)). The "conduct must be extreme to amount to a change in the terms and conditions of employment." Faragher, 524 U.S. at 788. Additionally, the conduct to which the employee is subjected must be both objectively and subjectively hostile. Harris, 510 U.S. at 21-22.

The four specified incidents do not rise to the level of being so extreme or severe that they altered the terms and conditions of Jones's employment. The comments were sporadic and infrequent; for example, Jones testified in his deposition that the "no preaching" comment was made between two and five times, (Jones Dep. at 214), and he was only asked to put his Bible away once (Jones Dep. at 230). The other identified incidents – the balling up of the flyer and the lanyard comment – were also isolated.

In addition to being infrequent, the incidents upon which Jones relies also fall short of being severe, outrageous, or physically threatening. More extreme conduct has been held to be insufficient to amount to a religiously hostile environment. See, e.g., Tessler v. KHOW Radio, Inc., No. 95-B-2414, 1997 WL 458489 (D. Colo. Apr. 21, 1997) (granting summary judgment for defendant on hostile environment claims of Orthodox Jewish plaintiff; finding that manager's several comments about the plaintiff's yarmulke, including calling it a "beanie" and asking if plaintiff had a propeller for it, were isolated and sporadic and therefore not actionable); Kantar v. Baldwin Cooke Co., No. 93 C 6239, 1995 WL 692022 (N.D. Ill. Nov. 20, 1995) (granting summary judgment for defendant where plaintiff was

referred to as a princess or "JAP," was asked about the cost of her religion, and was teased about leaving work early on Fridays for religious services, and where co-worker referred to a third person as "Jewish-speaking"); Shabat v. Blue Cross Blue Shield, 925 F. Supp. 977 (W.D.N.Y. 1996) (granting summary judgment for defendant where Israeli-born Jewish employee was asked "whether people from the Mideast beat their wives," "How come you cannot accept Jesus Christ as the messiah, the son of God? After all, he was a Jew," and "Who did you have to kill" to make matzah cake, and was told that he could have Yom Kippur off "even though there is no such holiday"; court found that comments were "occasional" and "brief" and showed a personality clash rather than discriminatory intent), aff'd sub nom. Shabat v. Billotti, 108 F.3d 1370 (2d Cir. 1997); Kaplan v. Banque Nationale de Paris, , NO. 94 CIV. 3965 (LLS), 1995 WL 753900 (S.D.N.Y. Dec. 19, 1995) (granting summary judgment on hostile environment claim where supervisor had asked Jewish plaintiff why he needed vacation time "for the Hebe holidays," told plaintiff he did not need Christmas off because he was Jewish, and told plaintiff not to "be so Jewish about it" when plaintiff corrected supervisor's profit and loss statement).

Additionally, although Jones concedes that the conduct must be both objectively and subjectively hostile, he then asserts that as a minister he is particularly susceptible to being offended by the comments. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Doc. 43 at 9-10). And, in any event, Jones testified in his deposition that, as to the "preaching" comment, he was merely "somewhat" offended. (Jones Dep. at 216). In sum, USA is entitled to summary judgment on Jones's hostile work environment claims.

ii. The Termination Claims

Jones also claims that he was terminated based on his race and religion. As correctly noted by USA in its summary judgment motion, Jones has not presented any direct evidence of discrimination. Instead, Jones relies on the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny in order to establish his claims of disparate treatment through circumstantial evidence. See, e.g., EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000) ("Disparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence. . . . Absent direct evidence, a plaintiff may prove intentional discrimination through the familiar McDonnell Douglas paradigm for circumstantial evidence claims.") (citations omitted); accord Harris v. Sec'y of the Army, 119 F.3d 1313, 1320 (8th Cir. 1997) ("Because she has no direct evidence of discrimination, Harris' sex discrimination claim is governed by the burden shifting analysis first articulated in McDonnell Douglas Corp. v. Green.").

Under this framework, the plaintiff in a disparate treatment case has the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas. As the Eleventh Circuit has noted, "[d]emonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997). If the plaintiff establishes a prima facie case, a presumption of discrimination arises. See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

Once the plaintiff has presented a prima facie case and its attendant presumption, the burden "shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. McDonnell Douglas, 411 U.S. at 802. The employer's "burden is one of

production, not persuasion; it 'can involve no credibility assessment.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)). If the employer meets its burden of production, "'the McDonnell Douglas framework – with its presumptions and burdens' – disappear[s], and the sole remaining issue [is] 'discrimination vel non.'" Reeves, 530 U.S. at 142-43 (quoting St. Mary's Honor Ctr., 509 U.S. at 510, and U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)). In order to prevail on a claim of disparate treatment, the plaintiff must establish that the employer acted with a discriminatory animus. Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1520-21 (11th Cir. 1995) (citing Burdine and McDonnell Douglas).

To make a prima facie showing of discriminatory termination under Title VII, a plaintiff must establish: (1) that he is a member of a protected class; (2) that he was terminated; (3) that the plaintiff was at least minimally qualified to do the job; and (4) that the employer replaced the plaintiff with someone outside of the plaintiff's protected class or treated a similarly-situated employee outside of the protected class more favorably. See, e.g., Cuddeback v. Fla. Bd. of Educ., 381 F.3d 1230, 1236 (11th Cir. 2004); Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004). In its summary judgment motion, USA asserts that Jones has not stated a prima facie case because he was not replaced and because he has not identified a similarly situated employee who was treated more favorably. However, construing the facts and all reasonable inferences therefrom in Jones's favor as the nonmovant, a prima facie case has been at least minimally stated.

As to replacement, it is undisputed that Jones was not replaced; instead, after his termination his work was redistributed to other employees. Although USA relies on case law

from other circuits for the proposition that this circumstance is fatal to Jones's prima facie case, USA cites no Eleventh Circuit decision on point. This Court is unwilling to find a lack of a prima facie case on this basis.

Additionally, as to the more favorable treatment of similarly-situated employees, USA relies on cases involving employee misconduct. However, the Eleventh Circuit has also stated that a plaintiff may make a prima facie case by showing "that he was suspended or fired while others not in the plaintiff's protected class, 'having comparable or lesser qualifications,' were retained." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984) (quoting Whiting v. Jackson St. Univ., 616 F.3d 116, 121 (5th Cir. 1980)); accord Weaver v. Casa Gallardo, 922 F.2d 1515, 1525 (11th Cir. 1991) (noting that the fourth prima facie element may also be satisfied in this fashion). Where, as here, the issue is job performance, the issue of similarity is more logically and appropriately addressed in the context of pretext than the prima facie case. Thus, because other similarly qualified employees were retained while Jones was terminated, a prima facie case has been made out under one of the articulated standards in this circuit.

However, even giving Jones the benefit of the doubt on the satisfaction of his burden of presenting a prima facie case of discrimination, his claims fail. USA has articulated a legitimate nondiscriminatory reason for its termination of Jones – that his performance was poor and that he failed to successfully complete the PIP. Thus, USA is entitled to summary judgment on the termination claims unless Jones presents evidence creating a genuine issue of material fact regarding whether this reason is a mere pretext for discrimination. See, e.g., Chapman v. Al Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000) ("If the plaintiff

does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."); accord Evans v. McClain of Ga., Inc., 131 F.3d 957, 964-65 (11th Cir. 1997) ("Under the established rule of law in this Circuit, a plaintiff can survive a motion for summary judgment or for judgment as a matter of law simply by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons.").

As the Eleventh Circuit has explained, "[t]he inquiry into pretext centers upon the employer's beliefs, and not the employee's own perceptions of his performance. Thus, where the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence." Holifield, 115 F.3d at 1565 (citations omitted).

In response to USA's summary judgment motion, the only evidence submitted by Jones is his declaration (Doc. 44). That declaration does not cast doubt on USA's explanation for its decision to terminate Jones. "To show that the employer's reasons were pretextual, the plaintiff must demonstrate 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" Cooper v. S. Co., 390 F.3d 695, 725 (11th Cir. 2004) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997)). Jones has not done so. Cf. Tidwell v. Carter Prods., 135 F.3d 1422, 1427 (11th Cir. 1998) (finding no issue raised as to pretext where evidence

presented by plaintiff did "not provide the needed 'more than a scintilla of evidence' to survive a motion for judgment as a matter of law" and did "not present a substantial conflict in the evidence as to [the employer's] purported reason for terminating Tidwell . . . as to support a jury question").

Jones has not raised a genuine issue of material fact as to whether USA had a good faith belief that Jones's job performance was below par, and there is no evidence that USA was instead motivated by racial or religious discrimination. Jones's declaration includes the fact that he was commended in 1996 by NASA for doing a good job. (Jones Decl., Doc. 44 at 2 ¶ 6). However, this commendation is not relevant to the issue at hand, especially considering performance appraisals in the record reflecting lower-than-average reviews over a more recent period of time. For example, in a December 1998 performance appraisal, Jones received ratings of 2s, 3s, and one 1 on a scale of 1-5 (one being the lowest and five being the highest). (Ex. 24 to Jones Dep.). In his December 1999 appraisal, Jones received all 2s and one 3, (Ex. 26 to Jones Dep.), and in November 2000 (Ex. 27 to Jones Dep.) and November 2001 (Ex. 28 to Jones Dep.), he received 2s and 3s on his performance appraisals.

The other statements in Jones's declaration merely express disagreement with USA's opinion of his performance. In essence, Jones seeks to have this Court step in and second-guess USA's business decisions. This the Court will not do. Cf. Davis v. Town of Lake Park, 245 F.3d 1232, 1244 (11th Cir. 2001) ("A contrary view would potentially open the door to a wide variety of unfair work assignment claims that should not be litigated in the federal courts. Title VII is not designed to make federal courts '"sit as a super-personnel

department that reexamines an entity's business decisions.""") (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)); Tidwell, 135 F.3d at 1427 ("'[A] plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason, at least not where, as here, the reason is one that might motivate a reasonable employer.'") (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997)) (alteration in original); Smith v. Ala. Dep't of Pub. Safety, 64 F. Supp. 2d 1215, 1228 (M.D. Ala. 1999) ("[T]he court's responsibility [is] not to second guess the wisdom of [Defendant's] reasoning, but to determine if the reasons given were merely a cover for discriminatory intent.'") (quoting Brown v. Am. Honda Motor Co., 939 F.2d 946, 951 (11th Cir. 1991)) (all but first alteration in original). Therefore, USA's motion for summary judgment on Jones's discriminatory termination claims shall be granted.

## III. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED** as to all counts of the Amended Complaint.

2. All other pending motions are **DENIED** as moot.

3. The Clerk is directed to enter judgment in favor of Defendant United Space

Alliance, L.L.C. in accordance with this Order. Thereafter, the Clerk shall close this file.

**DONE** and **ORDERED** in Orlando, Florida this 26 day of April, 2005.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party